**Date Signed:
February 12, 2018**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>KAANAPALI TOURS, LLC,<br><br>                    Alleged Debtor. | Case No. 17-01296<br>(Involuntary Chapter 11) |

### MEMORANDUM OF DECISION ON MOTION TO DISMISS

On December 15, 2017, petitioning creditors, Ashley Olson, Amy Richards, Shannon Wood, Susan Fernandez, Ken Clark, and Billie Bell, filed an involuntary bankruptcy petition against Kaanapali Tours, LLC ("KTL").[1] Amy Sutherland (one of KTL's two members) has filed a motion (on behalf of KTL) to dismiss the involuntary petition.[2] Subsequently, Privacy Charters, LLC[3] and Janice Nolan (the other member

---

[1] Dkt. 1.

[2] Dkt. 5

[3] Dkt. 35.

of KTL)[4] joined in the petition.

Because every petitioning creditor's claim is subject to a bona dispute, I will grant the motion and dismiss the case.

I. BACKGROUND

Alleged Debtor KTL was formed in 2009 as single-member, manager-managed, limited liability company ("LLC").[5] The initial member of KTL was Kyle Bebee Consulting, Inc.

On February 11, 2010, Sutherland and Nolan each purchased 50% of the membership units of KTL. On March 29, 2010, Sutherland and Nolan were appointed the exclusive managers of KTL.[6] On March 30, 2010, Sutherland and Nolan entered into a Members Agreement.[7]

On December 15, 2010, KTL borrowed $950,000 from the Sutherland Family Trust to purchase a vessel named the Queen's Treasure. On January 30, 2014, KTL borrowed an additional $660,000, which increased the amount owed to $1,610,000. The Queen's Treasure is KTL's primary asset. KTL was unable to obtain a permit to

---

[4] Dky. 37.

[5] Dkt. 5-6.

[6] Dkt. 5-10.

[7] Dkt. 22.1. The Members Agreement recites that "Nolan is skilled in the operation of boating operation and Sutherland is experienced in accounting and other back office skills."

operate commercial cruises so KTL leased the Queen's Treasure to Fun Charters, Inc.

Sutherland and Nolan disagreed about the management and operation of KTL. On September 18, 2017, Sutherland, on behalf of KTL, filed a complaint in state court ("State Court Action"), alleging breach of contract and unjust enrichment and seeking to dissolve KTL.

On or about September 2017, Nolan leased the Queen's Treasure to Privacy Charters, LLC ("Privacy Charters"), for a term of five years at a rate of $10,000 per month.[8] Nolan signed the lease on behalf of KTL, without the knowledge or consent of Sutherland.[9]

On November 6, 2017, Nolan deposited three checks to KTL's account in the amount of $5,000, $4,400, and $1,000.[10] The checks were issued by petitioning creditors Richards, Wood, and Olson, respectively. On November 9, 2017, Nolan deposited more checks for $10,000 and $1,000. The check were issued by Privacy Charters and petitioning creditor Fernandez, respectively.[11] On November 10, 2017, Nolan deposited another $3,000 by check and $1,000 by cash. The check was issued

---

[8] Dkt. 21 at 6, Dkt. 22 at 4.

[9] Dkt. 5-24, Dkt. 5-29, Dkt. 22 at 4.

[10] Dkt. 5-22, Dkt. 5-23.

[11] Dkt. 5-25.

U.S. Bankruptcy Court - Hawaii   #17-01296   Dkt # 41   Filed 02/12/18   Page 3 of 10

by petitioning creditor Bell, and the cash was paid by petitioning creditor Olson.[12] Petitioning creditor Clark issued a check payable to KTL on November 13, 2017 in the amount of $1,000.[13]

Sutherland did not consent to any of the loans, nor did she have any knowledge that these loans were made. After Sutherland found out about the loans, she notified Nolan to cease and desist from any work purportedly on behalf of KTL.[14]

On November 20, 2017, Sutherland filed a motion in the State Court Action seeking an injunction restraining Nolan from entering into loans and the appointment of a receiver. The motion was set for an evidentiary hearing for December 18, 2017.

On December 15, 2017, petitioning creditors Olson, Richards, Wood, Fernandez, Clark, and Bell filed the involuntary petition. On February 6, 2018, Privacy Charters joined in the petition, alleging a $10,000 claim.[15] On February 7, 2018, Nolan filed a joinder in the petition, alleging a $6,724 claim.[16]

## II. STANDARD

KTL argues that the court should dismiss the involuntary petition because

---

[12] Dkt. 5-26.

[13] Dkt. 21-2.

[14] Dkt. 5-24.

[15] Dkt. 35.

[16] Dkt. 37.

U.S. Bankruptcy Court - Hawaii   #17-01296   Dkt # 41   Filed 02/12/18   Page 4 of 10

(a) petitioning creditors are not qualified to file the petition because their claims are subject to a bona fide dispute; and (b) the involuntary petition was filed in bad faith.

Section 303 (b)(1) of the Bankruptcy Code establishes the requirements for commencing an involuntary bankruptcy case:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title . . . by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.]

Therefore, section 303(b) requires petitioning creditors to meet the following criteria: (a) minimum of three petitioning creditors which are holders of claims; (b) the petitioning creditors' claims must be non-contingent as to liability or the subject of a bona fide dispute as to liability or amount; and (c) the petitioning creditors' undisputed and non-contingent claims must aggregate at least $15,775 above the value of any liens secured their claims.

III. DISCUSSION

   A. The Requirements for Commencing an Involuntary Petition Against Alleged Debtor Are Not Met

The parties disagree as to whether the petitioning creditors are qualified to file

5

the involuntary petition under section 303. I hold that they are not qualified petitioning creditors because their claims are subject to a bona fide dispute as to liability or amount.

### 1. There Are More Than Three Entities Holding Claims Against the Alleged Debtor

Petitioning creditors Olson, Richards, Wood, Fernandez, Clark and Bell have provided copies of the checks that were deposited in KTL's bank account. There is no dispute that these petitioning creditors provided money to KTL, although there is no evidence of the terms on which the money was advanced. There are no declarations or other evidence supporting Privacy Charters' and Nolan's claims. I assume that petitioning creditors Olson, Richards, Wood, Fernandez, Clark, Bell, Privacy Charters, and Nolan hold claims against the alleged Debtor for purposes of this order.[17]

### 2. Petitioning Creditors' Claims Are the Subject of a Bona Fide Dispute

Only a person who is "a holder of a claim against [the alleged debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount"

---

[17] This assumption might be incorrect. Only one of the petitioning creditors, Richards, filed a declaration supporting her claim. Her declaration suggests that she was really advancing the money to Nolan, not to KTL. She states "I have lent to Jan Nolan for Ka'anapali Tours, they were and are 100% of my own suggestion and offering to her. I offered this money to her of my own free will to support her when and if she needed it to use as she saw fit to keep KT running. I offered her this money unconditionally . . ." Dkt. 21-1. (Emphasis added).

6

U.S. Bankruptcy Court - Hawaii   #17-01296   Dkt # 41   Filed  02/12/18   Page 6 of 10

may file an involuntary bankruptcy petition.[18] The burden is on the petitioning creditors to show that no bona fide dispute exists.[19] A claim is subject to a "bona fide dispute" if "there is an objective basis for either a factual or a legal dispute as to the validity of the debt.[20] If there is either a genuine issue of material fact, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed.

Sutherland argues that all of the petitioning creditors' claims are subject to a bona fide dispute because Nolan lacked authority to cause KTL to borrow money. To address this argument, I must consider whether the Operating Agreement, the Members Agreement, or the Hawaii Revised Statues gave Nolan the required authority.

*Operating Agreement*

When KTL's Operating Agreement was drafted in 2009, KTL had only one member and one manager.[21] The Operating Agreement was not amended after

---

[18] 11 U.S.C.A. § 303.

[19] *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2002).

[20] *Id.* (*citing In re Lough*, 57 B.R. 993, 996–97 (Bankr. E.D. Mich. 1986)).

[21] Section 6.1 states that, the "LLC shall be managed by the Manager(s) who shall be responsible for the management of the LLC's business and affairs" and Section 6.6 says that, the "LLC shall be managed by ONE Manager(s), until changed by and amendment to this Agreement, who shall be responsible for the management of the LLC's business and affairs. The first Manager(s) shall be W. KYLE BEBREE."

7

U.S. Bankruptcy Court - Hawaii   #17-01296   Dkt # 41   Filed 02/12/18   Page 7 of 10

Sutherland and Nolan each bought 50% of the membership units and became the managers of KTL in 2010. However, the Operating Agreement contains provisions that would apply if KTL had more than one member or more than one manager.

Section 6.11 of the Operating Agreement provides that, "Manager(s) have general supervision, direction, and control of the business of the LLC." It also states that the Manager(s) "may borrow money and incur indebtedness on behalf of the LLC . . ." Section 6.17 establishes that "a majority of the authorized number of Managers shall constitute a quorum for the transaction of business." Because Sutherland and Nolan are the only two managers of KTL, a majority vote means a unanimous vote.

No provision of the Operating Agreement permits only one manager to cause KTL to borrow money.

*Members Agreement*

Section 3 of the Members Agreement states that "the company shall be a manager managed limited liability company . . . the initial managers shall be Janice Nolan and Amy Sutherland."[22] The Members Agreement attaches a list of duties of managers,[23] but it does not give either manager sole authority to enter into loans on behalf of KTL. (The list suggests that if either member had the authority, it was

---

[22] Dkt. 5-5.

[23] Dkt. 22-1.

U.S. Bankruptcy Court - Hawaii   #17-01296   Dkt # 41   Filed 02/12/18   Page 8 of 10

probably Sutherland because she was in charge of all the financial aspects of KTL. Nolan was the manager responsible for the boating operations of KTL).

Therefore, the Members Agreement does not answer the question whether Nolan had the authority to borrow money on behalf of KTL without the consent of Sutherland.

*Hawaii Revised Statutes*

HRS § 428-404(b)(2) states that in a manager-managed limited liability company any matter relating to the business of the company may be exclusively decided by the manager or, <u>if there is more than one manager, by a majority of the managers</u>. (Emphasis added). A majority vote means a unanimous vote in this case.

HRS § 428-301(b) establishes that in a manager-managed limited liability company:

> (3) An act of a manager, including the signing of an instrument in the company name, for apparently carrying on in the ordinary course the company's business or business of the kind carried on by the company binds the company, unless the manager had no authority to act for the company in the particular matter and the person with whom the manager was dealing knew or had notice that the manager lacked authority; and
>
> (4) An act of a manager which is not apparently for carrying on in the ordinary course the company's business or business of the kind carried on by the company binds the company only if the act was authorized under section 428-404(b)(2).

9

HRS § 428-301(b)(3) is the only provision that could arguably permit Nolan, unilaterally, to borrow money on behalf of KTL. In this regard, there is at least a bona fide dispute as to whether Nolan's acts are within "the ordinary course of KTL's business" and whether petitioning creditors "knew or had notice that Nolan lacked authority."

Because there are genuine disputes regarding Nolan's authority to borrow money on behalf of KTL without Sutherland's consent, petitioning creditors' claims are the subject of a bona fide dispute and they are not qualified as petitioning creditors under section 303.

### 3. Petitioning Creditors' Undisputed Claims Do Not Aggregate at Least $15,775

Petitioning creditors' claims are all disputed. Therefore, the undisputed claims aggregate $0.

## B. Bad Faith

The parties dispute whether the involuntary petition was filed in good faith. I do not need to reach this issue because the petition must be dismissed on other grounds.

## V. CONCLUSION

The motion to dismiss is GRANTED and this case is DISMISSED. A separate final judgment will enter dismissing this bankruptcy proceeding.

END OF ORDER